UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVI SAMUEL PEREZ PEREZ (A-Number: 221-453-320),<br><br>                    Petitioner,<br><br>        v.<br><br>WARDEN, *et al.*,<br><br>                    Respondents. | Case No.  1:26-cv-3675-DJC-JDP<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Melvi Samuel Perez Perez entered the United States in 2013 and was re-detained by ICE in 2026.  Petitioner, proceeding through counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

**I.      Evidentiary Dispute**

I must begin by addressing a factual inconsistency between the parties.  Petitioner alleges that, in 2013, he entered the United States.  ECF No. 1 ¶ 38.  Petitioner asserts that he was approximately twelve years old at the time, and that immigration authorities detained and then released him.  *Id*. ¶ 39.  Petitioner does not allege to whom he was released or whether he was accompanied when he entered the United States.

1

In their answer, respondents did not address these allegations.  *See* ECF No. 9.  Accordingly, I ordered respondents to file a supplemental answer.  ECF No. 13.  Respondents' supplemental answer provides only that their "records reflect no prior detention or release by immigration authorities."  ECF No. 14 at 2.  Respondents submitted petitioner's Form I-213, wherein ICE states its conclusion that petitioner "entered the U.S. at an unknown place on or about an unknown date, without being inspected by an immigration official."  ECF No. 14-1 at 2.

Consequently, I ordered petitioner to file a supplemental traverse addressing respondents' supplemental answer.  ECF No. 15.  In that filing, petitioner attached a signed letter from his fiancée, who explained that she was providing a statement "due to the time urgency and inability to obtain a statement from [petitioner] on time to meet the court's deadline for this information."  ECF No. 16 at 2.  She states that:

> [Petitioner] came to the United States around 2013 when he was a minor.  He entered through the Mexico border and was detained by Immigration Authorities.  They had detained him for about a month.  They then released him here in the United States.  When he was released, they gave him some documents that he understood were immigration documents.  Unfortunately, he no longer has these documents and nor [sic] was he aware of any action he had to take regarding them.

*Id*.

Petitioner bears the burden of establishing the facts underlying his claim by a preponderance of the evidence.  *See Odle v. Calderon*, 65 F. Supp. 2d 1065, 1069 (N.D. Cal. 1999) (citations omitted); *see also Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1196 (W.D. Wash. 2025) (collecting cases that apply a preponderance burden in habeas proceedings).  Petitioner's allegations may be treated as an affidavit because they are in a verified complaint.  *See L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987)).  However, the evidentiary value of allegations is limited where the opposing party denies them.  *Wright v. Dickson*, 336 F.2d 878, 883 (9th Cir. 1964).

Respondents do not seriously contest the accuracy of petitioner's allegations. Rather, they simply state that their records do not corroborate his allegations.[1] *See* ECF No. 14 at 2. This distinction is subtle but dispositive of the issue because petitioner's allegations should be treated as an affidavit.[2] Accordingly, I find that petitioner has shown by a preponderance of the evidence that he entered the United States in 2013 as a minor, was detained by immigration authorities, and then was released.

## II.      Supplemental Background and Re-Detention

Since 2013, petitioner has lived continuously in the United States and has operated his own business. *See* ECF No. 1 ¶¶ 4, 9, 40. Petitioner's criminal history consists of three arrests for driving without a license, two of which resulted in a conviction. ECF No. 14-1 at 2. Most recently, petitioner was arrested on this charge on January 24, 2026. *Id*. He then came to the attention of ICE. *Id*. Petitioner was re-detained by ICE on February 4, 2026, when he was released from local custody. *Id*.

## III.     Petitioner's Initial Habeas Petition and Bond Hearing

On March 13, 2026, petitioner filed a petition for writ of habeas corpus in the U.S. District Court, Middle District of Florida. *Perez Perez v. Guthrie*, No. 2:26-cv-0730-SPC-NPM (M.D. Fla.), ECF No. 1.[3] Petitioner claimed that his re-detention without a bond hearing violated the Fifth Amendment and the Immigration and Nationality Act. *Id*. ¶¶ 38-46. Ruling only on petitioner's statutory claim, the court granted the petition and ordered that petitioner be afforded a bond hearing. *Perez Perez v. Guthrie*, No. 2:26-cv-0730-SPC-NPM, 2026 WL 872631, at *2

---

[1] In reviewing an immigration judge's adverse credibility finding, the Court of Appeals held that a petitioner could not be faulted for failing to provide a police report that was not "easily available" in that he would have had to request it from the opposing party. *Chawla v. Holder*, 599 F.3d 998, 1007 (9th Cir. 2010). I find this reasoning persuasive. Petitioner is unable to produce corroborating records because, if they exist, they are in possession of the government.

[2] Respondents argue that the court should decline to consider plaintiff's "traverse-only allegations for lack of notice and specificity." ECF No. 14 at 2. This argument is misplaced. As noted, petitioner presented these allegations in the complaint, and they are sufficiently specific to have put respondents on notice.

[3] To avoid confusion, all references to petitioner's initial habeas action will include the full case cite. All standalone references to an ECF Number (i.e., "ECF No. 1") refer instead to the instant action.

3

(M.D. Fla. Mar. 31, 2026).  Because the court did not state otherwise, it appears that the bond hearing was to be held in accordance with 8 U.S.C. § 1226 such that petitioner would bear the burden of demonstrating that he is neither a danger nor a flight risk.  *See id*.

On April 10, 2026, petitioner was provided a bond hearing, at which he was denied bond based on the finding that he "may be a danger to the community."  ECF No. 9-1 at 1. Specifically, the immigration judge denied bond based on petitioner's traffic violations and because he was "working without work authorization."  ECF No. 12 at 4.  There is no mention in the order or the transcript of who bore the burden of proof.  As such, it appears that this bond hearing was held in accordance with section 1226 such that petitioner carried the burden.

On April 24, 2026, petitioner filed a motion to enforce judgment.  *Perez Perez v. Guthrie*, No. 2:26-cv-0730-SPC-NPM (M.D. Fla.), ECF No. 16.  Petitioner argued that his bond hearing failed to comport with the demands of due process.  *Id*. at 8.  Three days later, the court denied petitioner's motion.  *Perez Perez v. Guthrie*, No. 2:26-cv-0730-SPC-NPM (M.D. Fla.), ECF No. 17.  Specifically, the court held that "the proper way to challenge the result of the bond hearing is appeal to the Board of Immigration Appeals."  *Id*. at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

4

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates the Fifth Amendment.  ECF No. 1 at 12-13.  Respondents counter that the petition should be dismissed as duplicative or for failure to exhaust.  ECF No. 9 at 2-5.  I address respondents' arguments in turn.  First, respondents argue that "petitioner raises the claims decided in his first habeas case and so he shouldn't receive relief."  *Id*. at 2.  "A claim is successive if it was raised in an earlier petition, or if it fails to raise a ground for relief that is new or different than a claim raised in an earlier petition and previously determined on the merits."  *Campbell v. Blodgett*, 997 F.2d 512, 515-16 (9th Cir. 1992).  While petitioner raised a due process claim in his prior proceeding, it was not decided on the merits of that claim.  Instead, the court issued relief based solely on petitioner's statutory claim.  *See Perez Perez v. Guthrie*, No. 2:26-CV-00730-SPC-NPM, 2026 WL 872631, at *1-2 (M.D. Fla. Mar. 31, 2026).  Accordingly, petitioner's due process claim should not be dismissed as duplicative.

Second, respondents argue that petitioner should exhaust his administrative remedies by appealing the immigration judge's order before he seeks habeas relief.  ECF No. 9 at 3-5.  I agree with respondents to the extent that petitioner challenges his initial bond determination.  However, "an exception to the exhaustion requirement has been carved for constitutional challenges to the Immigration and Naturalization Act and INS procedures because the BIA does not have jurisdiction to determine the constitutionality of the statutes it administers."  *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (cleaned up).  Because the BIA does not have jurisdiction to adjudicate petitioner's due process claim, petitioner does not need to exhaust before seeking habeas relief on the basis of such claim.  Accordingly, I turn to petitioner's due process claim.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty

interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026).  I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner in 2013. ECF No. 1 ¶ 39.  Courts in this Circuit have found that unaccompanied minors released into the United States have a protected liberty interest.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195 (N.D. Cal. 2017), *aff'd sub nom*,

6

*Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also Funes v. Warden, California City Corr. Ctr.*, No. 1:26-cv-3710-AMO, 2026 WL 1541796, at *2 (E.D. Cal. June 1, 2026) (collecting cases).  Although the record does not reveal whether petitioner was unaccompanied when he entered the United States, I find these decisions persuasive.  Immigration officials determined that petitioner should be released into the United States.  That conferred upon him a protected liberty interest in his continued release.

Since his release, petitioner has lived in the United States for approximately thirteen years.  Petitioner thereby formed "enduring attachments of normal life."  *See Morrissey*, 408 U.S. at 482.  Accordingly, I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release.  *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.

7

Petitioner has a private interest in continued release that developed over the approximately thirteen years between his release and his re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a pre-deprivation hearing is high. Prior to releasing petitioner in 2013, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690). Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondents have not provided any information about the additional burden that would fall on them as a result of being required to provide a bond hearing. *See* ECF No. 9.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violated his due process rights. Respondents appear to argue that because petitioner was provided a bond hearing, the court need not issue further relief. *See*

8

ECF No. 9 at 6.  However, this hearing did not comport with the requirements of due process.  As noted, there is no indication that the immigration judge required the government to prove danger or flight risk by clear and convincing evidence.  Rather, it appears that, in accordance with section 1226, petitioner carried the burden.  *See* ECF No. 9-1; ECF No. 12.  Because petitioner's re-detention implicates due process concerns, the government needs to show by clear and convincing evidence that he is a danger to the community or a flight risk.  *See Martinez v. Clark*, 124 F.4th 775, 780 (9th Cir. 2024); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases).  Accordingly, petitioner has not been provided a constitutionally adequate bond hearing.

Given this finding, I must determine the appropriate remedy.  Petitioner seeks immediate release or, alternatively, a bond hearing.  ECF No. 1 at 14.  Respondents do not address this issue.  *See* ECF No. 9-1.  To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the impracticality of providing any predeprivation process."  *Id*. at 128 (cleaned up).

Under the circumstances, I find that a bond hearing is the proper remedy.  Petitioner was already in local custody when he was re-detained.  ECF No. 14-1 at 2.  Moreover, given the absence of ICE records reflecting petitioner's prior release into the United States, there exists the possibility that the government was unaware that petitioner was in the United States.  Indeed, petitioner does not allege that he was released on any conditions of supervised release, and the fact that ICE records do not reflect petitioner's prior detention suggests that petitioner was not on supervised release.  As such, it might have been impracticable for the government to provide petitioner with a pre-deprivation bond hearing.

Due process still required, however, that petitioner be afforded a "prompt post-deprivation hearing" that complied with constitutional requirements.  *See Guillermo M.R.*, 791 F. Supp. 3d at 1036.  Petitioner, as noted, has not been afforded a hearing that comports with due process.  Accordingly, I find that the appropriate remedy is a bond hearing at which the government bears the burden of showing, by clear and convincing evidence, that petitioner is a danger to the

community or a flight risk. *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *15-16 (E.D. Cal. Oct. 16, 2025)).

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner (A-Number: 221-453-320) be provided a bond hearing within seven days of the date of the court's order. At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondents be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    June 25, 2026                          _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

10